**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-3999
_____

UNITED STATES OF AMERICA

v.

MAURICIO CONTRERAS-BURITICA,
                            Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Crim. No. 08-cr-0080-1)
District Judge:  Honorable Stanley R. Chesler
_____

Submitted Under Third Circuit LAR 34.1(a)
April 28, 2011
_____

Before: BARRY, HARDIMAN and TASHIMA,* *Circuit Judges*

(Opinion Filed:   May 11, 2011 )
_____

OPINION
_____

BARRY, *Circuit Judge*

    Mauricio Contreras-Buritica pled guilty to one count of conspiracy to import

_____

    * Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals
for the Ninth Circuit, sitting by designation.

cocaine, in violation of 21 U.S.C. § 963, and was sentenced to 365 months of imprisonment. His appellate counsel filed a motion to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), and Local Appellate Rule 109.2. Counsel's *Anders* brief is inadequate, but because the appeal is "patently frivolous," we will nonetheless grant the motion and affirm Contreras-Buritica's conviction and sentence, in accordance with *United States v. Coleman*, 575 F.3d 316, 321 (3d Cir. 2009).

## I.   BACKGROUND

Contreras-Buritica was a leader of a conspiracy to import cocaine from Colombia to New Jersey. With information from a confidential informant, DEA agents seized eight kilograms of cocaine in Colombia on August 30, 2007, cocaine that was intended to be delivered to Contreras-Buritica in New Jersey. He did not know the cocaine had been seized, however, and he met with his associates after the seizure and took possession of eight kilograms of sham cocaine. Two months later, under similar circumstances, the DEA seized twenty kilograms of cocaine in Colombia, and Contreras-Buritica was arrested when he met with his associates to pick up this second shipment.

The informant who tipped off the DEA regarding the cocaine in Colombia also told a government agent that Contreras-Buritica claimed that "he was a body guard and a hit man for the Cartel in Colombia" and that he bribed a judge there to "get rid of th[e] problem" of a murder or homicide charge. (Sentencing Hr'g Tr., March 20, 2009 ("March Sentencing Tr.") at 11-12.) He told the informant that he could supply him with cocaine,

2

ecstasy, handguns, and rifles.

On September 24, 2008, Contreras-Buritica pled guilty to one count of conspiracy to import cocaine. During that hearing, the District Court conducted a thorough colloquy according to Federal Rule of Criminal Procedure 11(b), and found that there was a factual basis for the plea and that the plea was knowing, voluntary, and intelligent. The defendant told the Court that he was satisfied with his counsel's representation, and the parties agreed that his offense involved more than fifteen but less than fifty kilograms of cocaine. His three co-defendants also pled guilty, and the government's investigation revealed that at least three additional people were involved in this conspiracy.

While he was in jail and before sentencing, Contreras-Buritica met with an undercover agent and asked him to protect a stash of cocaine and money at a house in New Jersey. During this period, he tried to use his network to import more cocaine from Colombia. He also believed that one of his co-defendants, who was housed in the same facility, was cooperating with the government. He and his cell mate accused the co-defendant of doing so and beat him. An Immigration and Customs Enforcement agent saw bruises and other signs of injury on the co-defendant. During a proffer session, Contreras-Buritica then lied to the government regarding these activities.

Contreras-Buritica's sentencing hearing began on March 20, 2009, and his counsel objected to the Presentence Investigation Report's ("PSR") enhancement for obstruction of justice as well as the denial of a reduction in the offense level for acceptance of

responsibility. He also objected to the facts in the PSR regarding his client's criminal activities while in detention. After hearing testimony from an Immigration and Customs Enforcement agent regarding those activities, however, the District Court adopted the facts in the PSR.

In accordance with the parties' agreement regarding the amount of cocaine for which Contreras-Buritica was responsible, the District Court applied a base offense level of 34 under U.S.S.G. § 2D1.1, increased that by four levels under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader of a criminal activity that involved five or more participants, and increased it by two additional levels for obstruction of justice under U.S.S.G. § 3C1.1. His total offense level was therefore 40. With a criminal history category of I, the guidelines range was 292 to 365 months.

The District Court applied the enhancement under § 3B1.1(a) because it was "more than satisfied that the evidence established that he was an organizer and a leader in that activity [importing cocaine from Colombia] that involved five or more people." (March Sentencing Tr. at 28.) The enhancement for obstruction of justice was applied due to the harm to his co-defendant, as well as his lies to the government during the proffer session. With respect to acceptance of responsibility, the Court stated that

> where there is evidence indicating that there should be enhancement for obstruction of justice, and that particularly where that obstruction of justice occurred after the guilty plea as is demonstrated here, there is no reason to award any points for acceptance of responsibility.

> In short, following his conviction, he lied to the government about meetings he had with individuals at jail, he attempted to negotiate a drug transaction,

4

he attempted to remove a stash of drugs which he had from a stash house, and all of those are more than sufficient to demonstrate that he should receive no consideration for acceptance of responsibility.

(*Id.* at 29-30.) After calculating the offense level, the Court recessed the sentencing hearing so that the government could obtain proof of Contreras-Buritica's criminal record in Colombia.

When the hearing reconvened on October 7, 2009, the District Court sentenced Contreras-Buritica to 365 months, noting that he was "the ringleader"; the amount of drugs involved "was, to put it mildly, substantial"; he attempted to traffic narcotics from jail and to protect the stash house; and he had a serious criminal record in Colombia.[1] (R. at Da-15-16.)

## II.    ANALYSIS[2]

In *Coleman*, we explained the process that we follow in analyzing a criminal appeal in which defense counsel has filed an *Anders* motion:

appellant's counsel must satisfy the court that he or she has thoroughly scoured the record in search of appealable issues and then explain why the issues are frivolous. The Court's inquiry when counsel submits an *Anders*

---

[1] After the government presented the District Court with the documentation it received from Colombia, and translations thereof, the Court found that Contreras-Buritica had been convicted there for extortion, aggravated theft, unlawful possession of weapons, and assault and battery. The Colombian convictions did not affect his criminal history category.

[2] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231, and we have jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Contreras-Buritica's appellate counsel, who did not represent him before the District Court, certified that she served her *Anders* motion and brief on the defendant and the government, and the government responded to it. Contreras-Buritica has not filed a *pro se* brief, which Rule 109.2 permits but does not require.

brief is thus twofold: (1) whether counsel adequately fulfilled Third Circuit Local Appellate Rule 109.2's requirements; and (2) whether an independent review of the record presents any nonfrivolous issues.

575 F.3d at 319 (internal quotation marks, citations, and punctuation omitted). We will grant the *Anders* motion and decide the appeal if we agree that it has no merit, but if we "find[] arguable merit to the appeal, or that the *Anders* brief is inadequate to assist the court in its review, [we] will appoint substitute counsel, order supplemental briefing and restore the case to the calendar." Local App. R. 109.2(a). If, however, the "frivolousness [of the appeal] is patent, we will not appoint new counsel even if an *Anders* brief is insufficient to discharge current counsel's obligations to his or her client and this court." *Coleman*, 575 F.3d at 321 (internal quotation marks omitted).

Counsel argues that the District Court had jurisdiction, that there is no appealable issue regarding the guilty plea, and that the sentence was legal and reasonable. Based on our independent review of the record, we agree. Counsel failed to show, however, that she "thoroughly scoured the record," and her *Anders* brief contains a number of errors. It states, for example, that "[a]t the Sentencing Hearing, Contreras-Buritica . . . requested a variance, and not a departure, based on his cooperation with Immigration and Customs officials," but cooperation was not at issue at either sentencing hearing. (*Anders* Br. at 1.) Contreras-Buritica instead argued against an obstruction of justice enhancement for, among other things, lying to the government, and he claimed that he was entitled to an offense level reduction for acceptance of responsibility, despite his attempts while

6

incarcerated to continue drug trafficking and intimidate his co-defendant. The issues at sentencing were thus quite different from the value of a defendant's cooperation.

Appellate counsel also states that "[a]t the Sentencing Hearing, Contreras-Buritica's counsel raised no objection to the Guideline calculations in the PSR." (*Id.* at 3; *see also id.* at 7-8.) But at the sentencing hearing in March of 2009, at which the District Court calculated the offense level, the defendant *did* object to the guidelines calculation and factual issues in the PSR.[3] The *Anders* brief also states that his guidelines range was "78 to 97 months," which is inaccurate. (*Id.* at 3.) Appellate counsel committed serious factual errors in reviewing this case. Her legal analysis is sparse, and the brief is "inadequate to assist the court in [our] review." Local App. R. 109.2(a).

We have nonetheless carefully reviewed the record and conclude that the appeal is "patently frivolous." *Coleman*, 575 F.3d at 321. Based on the record before us, the District Court did not err in accepting Contreras-Buritica's plea agreement and guilty plea. The Court's factual findings at sentencing were reasonable and well-supported. It correctly calculated the guidelines range, considered the factors under 18 U.S.C. § 3553(a), and used its discretion to impose a reasonable sentence, which was within the guidelines range. As we have identified no non-frivolous issues for appeal, we need not appoint new appellate counsel, order supplemental briefing, or return this case to the

---

[3] Contreras-Buritica's appellate counsel submitted to us only the transcript from the final sentencing hearing in October of 2009. We obtained the transcripts from the guilty plea hearing and the first sentencing hearing in March of 2009 directly from the

calendar.

## III. CONCLUSION

We will grant the motion to withdraw and affirm the judgment of sentence.

---

court reporter. We do not know whether appellate counsel reviewed the events at either of these hearings.

8